UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:17-cr-00108-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| DAVID GUDGEL, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Defendant David Gudgel's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 52. Gudgel supplemented his Motion shortly after filing. Dkt. 54. The Government filed a Response, opposing the Motion (Dkt. 58) and Gudgel replied (Dkt. 60).[1] The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[2] Upon review, and for the reasons set forth below, the Court DENIES the Motion.

---

[1] Gudgel filed a Motion for Extension of Time to File a Reply on August 21, 2023. Dkt. 59. Before the Court could rule on the Motion, Gudgel filed his Reply. Dkt. 60. Considering that Gudgel is acting *pro se*, and that his Motion for Extension was unopposed, the Court retroactively grants the Motion for Extension and considers Gudgel's Reply in this Order.

[2] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local rules

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

On December 7, 2017, Gudgel pleaded guilty to possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime. Dkt. 24. At the subsequent sentencing hearing, the Court[3] sentenced Gudgel to 210 months of imprisonment, followed by five years of supervised release. Dkt. 41. Gudgel's anticipated release date is April 8, 2032.

On May 14, 2023, Gudgel submitted a request for compassionate release to the warden of his facility. Dkt. 52-1, at 8. The Bureau of Prisons (the "BOP") did not act on his request. Just over a month later, Gudgel filed the instant Motion for Compassionate Release, arguing that a combination of the characteristics of his incarceration, in tandem, support a reduction of his sentence. Dkts. 52, 54. Gudgel also requests that the court appoint him counsel. Dkt. 52, at 1.

## III. LEGAL STANDARD

Gudgel seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances. In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with

---

of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal rules of Criminal Procedure or the Local Rules of Criminal Practice").

[3] This case was initially assigned to United States District of Idaho Judge Edward J. Lodge, but was reassigned to the undersigned on December 10, 2019, upon Judge Lodge's retirement. Dkt. 48.

MEMORANDUM DECISION AND ORDER - 2

applicable policy statements" issued by the U.S. Sentencing Commission.[4] 18 U.S.C. § 3582(c)(1)(A). If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id.*; *Rodriguez*, 424 F. Supp. 3d at 680.

The policy statements at U.S.S.G. § 1B1.13 establish that "extraordinary and compelling reasons" include: (1) a defendant's medical circumstances; (2) a defendant's age combined with his or her experiencing serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering abuse by an employee or contractor of the BOP; (5) a defendant's subjection to an unusually long sentence where the defendant has already served at least ten years of the sentence; or (6) any other circumstance or combination of circumstances of similar gravity. *Id.* at § 1B1.13(b). The statements also assert that, before a sentence may be reduced, the Court must find that the defendant is not a danger to the safety of any other person or to the community. *Id.* at § 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the BOP—and not those brought by defendants individually. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). To be sure, district courts were free to

---

[4] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

MEMORANDUM DECISION AND ORDER - 3

consult the statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. However, under recent amendments, U.S.S.G. § 1B1.13 expressly applies to motions brought by the BOP Director *and* to those brought by individual defendants. U.S.S.G. § 1B1.13(a). Along with its sister district courts in the Ninth Circuit, the Court understands these amendments to resolve the discrepancy highlighted in *Aruda* and to make U.S.S.G § 1B1.13 binding. *See United States v. Brugnara*, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024); *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *United States v. Cunningham*, 2024 WL 50908 (D. Mont. Jan. 4, 2024); *United States v. Brown*, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023)

In any event, the catch-all clause at U.S.S.G. § 1B1.13(b)(5) affords the Court significant leeway in defining precisely what qualifies as an extraordinary and compelling justification for a sentence reduction.

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under 18 U.S.C. § 3582(c)(1)(A), a defendant may move the Court for a reduction in sentence only after he has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." Here, Gudgel filed a request with the warden, then waited beyond the requisite thirty days to file the instant Motion. *See* 18 U.S.C. § 3582(c)(1)(A). Accordingly, the Court finds that Gudgel has satisfied the statutory exhaustion requirements.

**B. Extraordinary and Compelling Reasons**

As mentioned above, under the "other reasons" provision at U.S.S.G. § 1B1.13(b)(5), district courts have wide discretion in evaluating whether a defendant's circumstances are extraordinary and compelling enough to justify a sentence reduction. Gudgel argues that three characteristics of his incarceration, "in combination," constitute a single extraordinary and compelling reason to reduce his sentence under § 1B1.13(b)(5). Dkt. 52, at 2. First, he claims that, had he been sentenced after the enactment of the First Step Act, he would have qualified for the safety valve provision at 18 U.S.C. § 3553(f), which would have resulted in a lighter sentence. *Id.* at 3–5. Next, Gudgel asserts that prison conditions during the COVID-19 pandemic resulted in a harsher punishment than the Court anticipated when crafting his sentence. *Id.* at 5–6. Finally, Gudgel contends that his extensive participation in educational programs while in the BOP's custody indicates that he is ready for a return to civilian life. *Id.* at 6. The Court will address each of these arguments, and their combined effect, in turn.

*1. Safety Valve*

The Court begins with Gudgel's claim that he would have qualified for the safety valve provision of the First Step Act if he had been sentenced after its enactment. The provision in question allows courts to disregard mandatory minimum sentence requirements—thereby reducing the length of some sentences—in certain instances. 18 U.S.C. § 3553(f). However, subsection two of the provision makes clear that mandatory minimums may be disregarded only when the defendant did not possess a firearm in connection with the offense. § 3553(f)(2). As part of his plea agreement, Gudgel pleaded

guilty to possession of a firearm in furtherance of a drug trafficking crime. Dkt. 24. Thus, even had Gudgel been sentenced after the enactment of the First Step Act, the safety valve provision would clearly *not* apply to him. Accordingly, Gudgel's first argument lends no weight to his assertion of extraordinary and compelling circumstances justifying release.

### 2. Pandemic Conditions

The Court turns next to Gudgel's assertion that his subjection to prison pandemic protocols has resulted in a harsher sentence than the Court anticipated. In support of this assertion, Gudgel contends that, because he has been subjected to lockdown and quarantine periods, the cancelation of family visits, and exposure to other ill inmates, the Court could "reasonably find that a reduction in [his] sentence . . . provid[es] a [punishment] equivalent to the longer but less harsh sentence he was originally given." Dkt. 52, at 5.

There is no doubt that the COVID-19 pandemic made life more difficult for prisoners than it had previously been. Nevertheless, as the Court recently noted, "[i]f a set of circumstances applies to much of the prison population, it cannot be said to be extraordinary." *United States v. Carlos-Tofolla*, 2023 WL 3484163, at *3 (D. Idaho May 16, 2023); *see also United States v. Kleint*, 2022 WL 1991323, at *4 (D. Idaho June 6, 2022) ("Even when courts have considered COVID-19 prison conditions as a factor on a Motion for Compassionate Release, they have held that a change in conditions itself does not warrant a sentence reduction."). Gudgel has certainly shown that prison life was less tolerable during the pandemic. But he has not shown that he was *individually* or *uniquely* impacted by pandemic protocols. To the contrary, the circumstances of which Gudgel complains appear to have been shared, not only by those in Gudgel's facility, but by

MEMORANDUM DECISION AND ORDER - 6

prisoners throughout the federal prison system.

Thus, while acknowledging the difficulties caused by the pandemic, the Court finds that those generalized difficulties certainly do not, on their own, rise to the level of extraordinary and compelling, and they lend little, if any, weight to the combined calculus of Gudgel's request.

### 3. Rehabilitation Efforts

Finally, the Court addresses Gudgel's argument regarding his rehabilitation efforts. Under U.S.S.G. § 1B1.13(d), a defendant's rehabilitation efforts may not, on their own, constitute an extraordinary and compelling reason for a sentence reduction, but they "may be considered in combination with other circumstances in determining whether and to what extent a reduction" is justified. Gudgel has produced evidence that, during his incarceration, he has actively participated in a variety of educational and rehabilitative programs. *See* Dkt. 52, at 6; Dkt 52-1, at 39–40. Such participation is laudable, and it lends at least some marginal weight to Gudgel's request. However, there are no other applicable circumstances that his rehabilitation efforts may be considered in combination with, and standing alone, they are not sufficient to warrant a sentence reduction.

### 4. Combined Weight of Gudgel's Circumstances

In summary, Gudgel's safety-valve argument does nothing to show extraordinary and compelling circumstances warrant a reduction in his sentence. The pandemic prison situation applies to all inmates and is not extraordinary and compelling. Gudgel's participation in BOP educational courses is a factor that could lend peripheral support to a finding of extraordinary and compelling circumstances, but without at least one other, more

substantial element, the Court finds that Gudgel falls far short of qualifying for a sentence reduction.

### C. Danger to Individuals or the Community

Even if the Court were to find that Gudgel has presented extraordinary and compelling reasons for a sentence reduction, Gudgel has failed to show that, if released, he would not pose a danger to the community, as required by U.S.S.G. § 1B1.13(a)(2). Gudgel has a lengthy criminal history involving firearms and the use and distribution of controlled substances. *See* Dkt. 26, at 7–13. To argue for a sentence reduction, the Court would expect Gudgel to address this history, then to provide at least some discussion of how he plans to avoid falling back into old habits. However, the only instance in which Gudgel's motion even tangentially addresses his post-release plans is in his assertion that the BOP rates his recidivism risk as "low" on a scale of "high, medium, low, or minimum." Dkt. 52, at 7–8. Gudgel does not discuss where he will live, with whom he will live, or how he plans to provide for himself. Nor does he express contrition for his significant criminal history. Accordingly, the Court finds that Gudgel has failed to carry his burden of demonstrating that he does not present a danger to the community. Thus, he cannot qualify for compassionate release.

### D. 3553(a) Sentencing Factors

Gudgel has also failed to show that the factors listed in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. Under § 3553(a), a sentence must, among other things, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from

further crimes of the defendant, and be similar to the sentences of similarly situated defendants. Gudgel does not discuss how a commuted sentence would serve these aims. Thus, again, he cannot qualify for compassionate release.

### E. Request for Counsel

Finally, with respect to Gudgel's request for appointment of counsel (Dkt. 52, at 1), there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). Instead, the decision whether to appoint counsel in post-conviction proceedings (including requests for compassionate release) rests with the discretion of the district court. *United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2005). In this case, the Court has reviewed the materials and does not find any circumstances warranting the appointment of counsel. Accordingly, the Court DENIES Gudgel's request.

## V. CONCLUSION

In sum, the Court finds that Gudgel has exhausted his administrative remedies. However, he has failed to show that: (1) extraordinary and compelling circumstances justify his release; (2) he does not present a danger to the community upon release; and (3) a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Therefore, the Court cannot depart from its prior sentence and release Gudgel at this time. The Court DENIES Gudgel's Motion.

## VI. ORDER

It is **HEREBY ORDERED**:

1. Gudgel's Motion for Extension of Time to File a Reply (Dkt. 59) is **GRANTED**.

2. Gudgel's Motion for Compassionate Release (Dkt. 52) is **DENIED**.

3. Gudgel's Motion for Appointment of Counsel is **DENIED.**

DATED: February 22, 2024

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 10