UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID GUDGEL,

Defendant.

Case No. 1:17-cr-00108-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is Defendant David Gudgel's Motion for Reduction in Sentence (Compassionate Release). Dkt. 62. The Government opposes the Motion. Dkt. 64.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1] Upon review, and for the reasons set forth below, the Court DENIES Gudgel's Motion.

## II. BACKGROUND

On December 7, 2017, Gudgel pleaded guilty to possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime.

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

Dkt. 24. At the subsequent sentencing hearing, the Court[2] sentenced Gudgel to 210 months of imprisonment, followed by five years of supervised release. Dkt. 41. Gudgel's anticipated release date is April 8, 2032.

On May 14, 2023, Gudgel submitted a request for compassionate release to the warden of his facility. Dkt. 52-1, at 8. The Bureau of Prisons (the "BOP") did not act on his request. Just over a month later, Gudgel filed a Motion for Compassionate Release, arguing that a combination of factors supported a reduction of his sentence and requesting that the court appoint him counsel. Dkts. 52, 54. The Government opposed the Motion. Dkt. 58. Ultimately, the Court found Gudgel's first claim (that he was safety valve eligible) was without merit; that his second claim (related to harsh prison conditions during the COVID-19 pandemic) did not rise to the level of extraordinary and compelling; and his third claim (of rehabilitation efforts) was not, standing alone, enough to substantiate a sentence reduction. *See generally* Dkt. 61. The Court also found Gudgel was not entitled to the appointment of counsel. *Id*. at 9.

On January 26, 2026, Gudgel filed his second request or compassionate release with the warden in his BOP facility and filed the instant motion on April 27, 2026 when the warden failed to respond to his second request. Dkt. 62. Again, the Government objects to any reduction in Gudgel's sentence or early release. Dkt. 64. Gudgel did not file a reply.

## III. LEGAL STANDARD

Gudgel seeks compassionate release under the FSA, 18 U.S.C. § 3582(c)(1)(A),

[2] This case was initially assigned to United States District of Idaho Judge Edward J. Lodge, but was reassigned to the undersigned on December 10, 2019, upon Judge Lodge's retirement. Dkt. 48.

which allows a court to modify a sentence under certain circumstances. To grant compassionate release, a district court must first determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[3] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *Rodriguez*, 424 F. Supp. 3d at 680.

The policy statements at U.S.S.G. § 1B1.13 state that "extraordinary and compelling reasons" include: (1) a defendant's serious medical condition; (2) a defendant's age combined with serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering of abuse by an employee or contractor of the BOP; (5) any other circumstance or combination of circumstances of similar gravity; or (6) the defendant's subjection to an unusually long sentence where the defendant has already served at least ten years of the sentence. *Id.* at § 1B1.13(b). The statements also assert that, before a sentence may be reduced, the Court must find that the defendant is not a danger to the safety of any other person or to the community. *Id.* at

[3] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (citing 18 U.S.C. § 994(t)) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

§ 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the BOP—not those brought by defendants individually. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). District courts were free to consult the Guideline's statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. However, under recent amendments, U.S.S.G. § 1B1.13 expressly applies to motions brought by the BOP Director and to those brought by individual defendants. U.S.S.G. § 1B1.13(a). These amendments make U.S.S.G § 1B1.13 binding. *See, e.g.*, *United States v. Brugnara*, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024); *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *United States v. Cunningham*, 2024 WL 50908 (D. Mont. Jan. 4, 2024); *United States v. Brown*, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023).

The catch-all clause at U.S.S.G. § 1B1.13(b)(5) affords the Court significant leeway in defining precisely what qualifies as an extraordinary and compelling reason sufficient to justify release.

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

As noted, the FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Here, Gudgel filed a request with the warden (*see* Dkt. 62, at 19-20), then waited beyond the requisite thirty days to file the instant Motion. *See* 18 U.S.C. § 3582(c)(1)(A). Accordingly, the Court finds Gudgel has satisfied the statutory exhaustion requirements and will move to discussing the substance of his motion.

**B. Extraordinary and Compelling Reasons**

The Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Gudgel's sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). Gudgel bears the burden of establishing that extraordinary and compelling reasons exist to justify release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020). The Court will address each reason for release in turn.

*1. Medical Circumstances*

First, Gudgel states he suffered a brain aneurysm in 2022, and that he is at an increased risk of suffering another due to his past lifestyle factors including the use of tobacco, alcohol, cocaine, and methamphetamine. Gudgel also claims the stress of incarceration directly contributes to an increased risk of aneurysm or developing further health problems associated with high blood pressure.

The United States Sentencing Commission Guidelines provide that extraordinary and compelling reasons for release may exist if the medical circumstances of the defendant are as follows:

(A) The defendant is suffering from a terminal illness (i.e., a serious and

> advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process,(iv) that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B.1.13(b)(1)(A)–(D). Gudgel does not provide any evidence he is suffering from a terminal, end-of-life illness with a high probability of death within a specific time period. While Gudgel does claim to have suffered an aneurysm in 2022, and that the initial aneurysm, in combination with his past habits and the stressors of being incarcerated increase his odds of suffering another aneurysm, this is not a terminal illness. Gudgel has not provided any evidence of a specific prognosis of life expectancy.

The Court acknowledges Gudgel's argument that he is experiencing deteriorating physical and mental health due to the aging process. However, Gudgel has not provided any evidence that this mental and physical deterioration has substantially diminished his

ability to provide self-care within the environment of a correctional facility.

In short, none of the medical circumstances argued by Gudgel can serve as the basis for a compassionate release.

*2. Family Circumstances*

Second, Gudgel argues his wife suffers from Osteopenia, and without physical assistance, is at risk of severe injury and/or death. Due to this medical condition, Gudgel's wife is only able to work on a part-time basis. Gudgel claims the Court should release him so he can care for his wife.

While the Court is sympathetic towards the medical afflictions of Gudgel's spouse, the evidence provided has not reached the standard of extraordinary as enumerated by U.S.S.G. § 1B1.13(b)(3)(B), which states, "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Gudgel has failed to provide evidence establishing that his spouse is incapacitated. Moreover, her employment, even on a part-time basis, demonstrates a level of mental capacity inconsistent with that of an incapacitated person who requires a caregiver.

Gudgel's spouse's condition cannot serve as the basis for compassionate release.

*3. Rehabilitation*

Third and finally, Gudgel asks the Court to consider the numerous courses he has completed while incarcerated as well as his history of no infractions or violations.

The Court commends Gudgel on his efforts to better himself while incarcerated and for remaining compliant with all rules and regulations. But these acts, standing alone,

cannot justify compassionate release. The Sentencing Commission's applicable policy statement clearly outlines that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" to grant early release. U.S.S.G. § 1B1.13 cmt. n.3 (citing 28 U.S.C. § 994(t)). While courts have occasionally granted early release based upon a successful showing of rehabilitation when combined with other factors, the evidence of rehabilitation itself must rise to the level of "extraordinary and compelling."[4] This does not support an early release.

**C. Danger to Individuals or the Community**

Even assuming Gudgel had demonstrated extraordinary and compelling reasons warranting a sentence reduction, he has not established that his release would not pose a danger to the safety of the community, as required by U.S.S.G. § 1B1.13(a)(2). Gudgel has an extensive criminal history involving firearms and the use and distribution of controlled substances. *See* Dkt. 26, at 7–13.

Gudgel contends he no longer poses a danger to the community and points to several aspects of his conduct while incarcerated in support of that assertion. In particular, he notes BOP has entrusted him with three major work assignments, each of which requires a significant degree of trust and responsibility. He also points to the plans he has made for his life following release. Gudgel has made arrangements to participate in drug-treatment

---

[4] For example, in *United States v. Rodriguez*, that court found the evidence submitted in support of the defendant's rehabilitation efforts was "nothing short of remarkable." 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). The defendant submitted a collection of letters from friends, family, fellow inmates, and, most importantly, from 27-prison staff members attesting to his exemplary work ethic, kindness, and overall attitude that had remained consistent over the course of a 20-year sentence. The court there felt the overwhelming evidence the defendant provided regarding his rehabilitation, *combined with* the defendant's health risks and COVID-19 conditions, were compelling enough to grant early release. *Id.*

programming at Trivium Life Services near his home and has identified individuals who have committed to helping him remain accountable following his release. These efforts demonstrate that Gudgel has taken meaningful steps toward rehabilitation and toward becoming a productive member of the community.

As above, the Court recognizes and commends Gudgel for what appears to be an exemplary record while in custody and for the substantial effort he has made to prepare for his return to the community. Nevertheless, Gudgel has not addressed an important consideration bearing on whether he would pose a danger to the community if released: his understanding of and accountability for his past conduct. Although Gudgel characterizes his past actions as criminal and destructive, he does not express remorse for that conduct or otherwise demonstrate an acknowledgment of the harm caused by his actions. His rehabilitative efforts while incarcerated are commendable, but they do not, standing alone, establish he would not pose a danger to the community upon release.

Accordingly, the Court finds that Gudgel has failed to carry his burden of demonstrating that he would not pose a danger to the safety of the community if released. He therefore does not qualify for compassionate release.

**D. 3553(a) Factors**

Finally, the Court must address the 18 U.S.C. § 3553(a) factors to the extent any are applicable and whether releasing Gudgel early is consistent with the goals of sentencing.[5]

[5] Under the "Factors To Be Considered in Imposing a Sentence," this statute provides the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]":

Gudgel was engaged in trafficking large quantities of methamphetamine, a controlled substance that poses a significant risk of addiction and harm to members of the community. His criminal history includes prior convictions for delivery of a controlled substance in 2002, delivery of a controlled substance in 2006, and felon in possession of a firearm in 2007. Despite these prior convictions, Gudgel continued to engage in the distribution of methamphetamine and the possession and sale of firearms, including possession of firearms in furtherance of his drug-trafficking activities.

The sentence imposed by the Court appropriately considered the factors set forth in 18 U.S.C. § 3553(a), and a further reduction is not supported by the § 3553(a) factors, nor would it be consistent with the punitive and remedial goals of sentencing.

## V. CONCLUSION

In sum, the Court finds Gudgel properly exhausted his administrative remedies. However, the Court finds he has not presented compelling and extraordinary reasons for his release or that a reduction in his sentence would be consistent with the § 3553(a) sentencing factors.

---

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a).

Accordingly, the Court DENIES Gudgel's Motion for Compassionate Release.

## VI. ORDER

The Court **HEREBY ORDERS**:

1. Gudgel's Motion for Compassionate Release (Dkt. 62) is **DENIED.**

DATED: September 21, 2026

David C. Nye
U.S. District Court Judge